**File.4949**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JESSICA PARK, Individually and as Independent Administrator of the Estate of DANNY KIM, deceased;<br>         Plaintiffs,<br>v.<br><br>THOMAS DART, SHERIFF OF COOK COUNTY; PARRISH D. ARCHER, JR.; CHARLES L. AUSTIN; ALOJZY K. DABROWSKI; SHERRI L. LIPSCOMB; COUNTY OF COOK, ILLINOIS; and DR. BHARATHI R. MARRI, M.D.;<br>         Defendant(s). | Case No. 20-cv-06662 |

### FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, JESSICA PARK ("Plaintiff"), Individually and as Independent Administrator of the Estate of DANNY KIM ("Danny"), deceased, by and through her attorneys, BORIS G. SAMOVALOV and ZANE D. SMITH of ZANE D. SMITH & ASSOCIATES, LTD, and for her Complaint against the Defendants, THOMAS DART, SHERIFF OF COOK COUNTY; PARRISH D. ARCHER, JR.; CHARLES L. AUSTIN; ALOJZY K. DABROWSKI; SHERRI L. LIPSCOMB; COUNTY OF COOK, ILLINOIS; and DR. BHARATHI R. MARRI, M.D., states as follows:

### JURISDICTION AND VENUE

1.      This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.      Venue is proper under 28 U.S.C. §1391(b) as the events giving rise to the claims

1

asserted in this Complaint occurred in the Northern District of Illinois.

## PARTIES

4.  Plaintiff is the Independent Administrator of the Estate of DANNY KIM and is his mother and sole heir.

5.  Danny, deceased, was a former detainee at the Cook County Department of Corrections ("CCDOC").

6.  Defendant, THOMAS DART ("Sherriff"), is and was, at all relevant times, the duly appointed and sworn Sheriff of the County of Cook, State of Illinois, who is being sued in this action in his official capacity.

7.  PARRISH D. ARCHER, JR. ("Archer"), at all times relevant hereto, was a correctional officer at CCDOC, who is being sued in this action in his individual capacity.

8.  CHARLES L. AUSTIN ("Austin"), at all times relevant hereto, was a correctional officer at CCDOC, who is being sued in this action in his individual capacity.

9.  ALOJZY K. DABROWSKI ("Dabrowski"), at all times relevant hereto, was a correctional officer at CCDOC, who is being sued in this action in his individual capacity.

10.  SHERRI L. LIPSCOMB ("Lipscomb"), at all times relevant hereto, was a correctional officer at CCDOC, who is being sued in this action in her individual capacity.

11.  COUNTY OF COOK, ILLINOIS ("Cook County"), at all times relevant hereto, was a political and administrative division of the State of Illinois, providing certain local governmental and public health services. Cook County shared responsibility, along with the Sherriff, including providing healthcare to inmates and overseeing and supervising inmates identified as requiring mental health care. Cook County is joined in this action pursuant to *Carver v. Sheriff of LaSalle County,* 324 F.3d 947 (7th Cir. 2003). Furthermore, Cook County, by and

2

through Cook County Health and Hospital System was an apparent employer or actual employer of Dr. Marri.

12.     Dr. Marri, at all times relevant hereto was a psychiatrist and an employee or apparent employee of Cook County, who evaluated Danny.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### HISTORY OF THE SHERRIFF'S AND COOK COUNTY'S FAILURES TO PROVIDE PROPER SUPERVISION FOR DETAINEES WITH MENTAL ILLNESSES

13.     On July 11, 2008, the United States Department of Justice sent a letter to the Sheriff and Cook County, following a lawful investigation into policies and practices of CCDOC. This investigation, among many findings, concluded that the Sheriff and Cook County did not provide specialized training concerning suicide prevention to correctional officers working with individuals with mental illnesses, and CCDOC did not provide staff with quick access to cut-down tools for quick response in the event of a suicide attempt by hanging.

14.     In 2010, Defendants, Sheriff and Cook County, entered into and Agreed Order in *United States v. Cook County*, 10 C 2946. The Agreed Order imposed a variety of obligations on the Sheriff and Cook County, including joint responsibility to monitor detainees exhibiting psychological symptoms at the CCDOC.

15.     In early 2011, Defendants, Sheriff and Cook County, entered into an inter-Agency Agreement. The Inter-Agency Agreement requires the County to plan and review training for the Sheriff's employees in the area of suicide prevention and recognition of acute manifestations of certain medical and mental health problems. The agreement also requires Cook County to collaborate with the Sheriff to train and monitor Sheriff's staff designated to supervise detainees with documented mental health conditions.

16.     The Sheriff and Cook County both are responsible for the housing of inmates with

3

mental health conditions.

17.     Inmates with diagnosed mental health conditions are supposed to be assigned to living units (or tiers) at the CCDOC. These living units are frequently referred to as a "psych tier" at the CCDOC.

18.     The Sheriff and Cook County jointly opened a new division at the CCDOC in 2013 called the Residential Treatment Unit ("RTU"). The RTU was designed to house inmates with diagnosed physical and psychological ailments.

19.     The RTU has been grossly understaffed and mismanagement, and often inmates who need to be sent to the RTU end up being placed in regular living units at CCDOC, due to lack of trained staff.

20.     The chronic staff shortages and lack of training have caused the Sheriff's sworn members to be unable to provide basic security to the detainees and, in fact, many of the detainees with mental illnesses are not even properly transferred to RTU.

21.     The staff shortages and lack of proper training for correctional officers significantly interfere with the Sheriff and County's ability to supervise and monitor detainees with mental illnesses.

22.     Due to the staffing shortages, Cook County is unable to train an adequate number of the Sheriff's sworn staff responsible for supervising and monitoring inmates designated as having a mental illness.

23.     At all times relevant hereto, RTU had a "psych tier," where inmates with mental illnesses are supposed to be under "direct supervision."

24.     "Direct supervision" means direct and continuous supervision of inmates by a sworn member on a 24-hour basis requiring the sworn member to be in direct and oral contact with

the inmantes.

25.     Every Tier in the RTU must have a security check pursuant to the policy of the CCDOC at least every 30 minutes.  It is common knowledge that some tiers in the RTU designed as a "psych tier" must have more frequent security checks due to the type of inmates housed in the living unit.

26.     A security check requires a tier officers to walk the entire tier, communicate with all inmates, inspect the bathroom, utility closet, and to make sure all doors and windows are secure.

27.     To conduct a security check, it is necessary for two correctional officers to be present on a tier.

28.     The Sheriff is aware that many detainees with mental illnesses, who require proper supervision in the RTU are placed in the divisions of CCDOC that are not properly equipped or staffed to handle inmates with mental illnesses.

29.     The failure to properly transfer inmates with mental illnesses causes both inmates and staff to be at a serious risk of harm, due to the impact that anxiety and stress, induced by detention or incarceration, may have on individuals detainees that are not mentally stable.

30.     The Sheriff's executive staff and the Cook County's executive medical staff at the CCDOC have personal knowledge that due to inadequate staffing and inability to transfer detainees to RTU and/or maintain appropriate supervision, CCDOC is dangerous and has contributed to serious personal injuries to inmates and staff.

31.     At all times relevant in 2019, the Sheriff did not take any reasonable action to remedy the significant staff shortages, lack of training, and failures to transfer inmates to the right divisions at the CCDOC.

32.     Defendants Sheriff and Cook County knew the absence of specially trained

correctional officers to monitor and supervise detainees designated as having mental illnesses exposed inmates to unnecessary risk of harm because the assigned staff lacked the ability to make on-going assessments when an inmate's behavior indicated he may harm himself.

**DANNY'S INCARCERATION AT CCDOC AND PSYCHIATRIC EVALUATIONS**

33.     The intake process at the CCDOC includes a medical evaluation by defendant Cook County.

34.     During the initial intake, Defendant, Cook County, documented that Danny had a history of mental illness and was previously diagnosed with ADHD, anxiety, and depression.

35.     Further, it was noted that Danny had not taken his prescription for Prozac in the two days immediately preceding his evuation.  Further, it was noted that he had been previously hospitalized for behavior reasons and had previously received clinical psychiatric care.

36.     Despite the foregoing red flags and history of mental instability, Danny was assigned to a standard living Unit in Division 6, without any special supervision requirements.

37.     On November 4, 2019, Danny appeared in Court in his criminal case.

38.     At that time, he exhibited odd behavior to his counsel, such as talking to himself in an animated fashion (as though he was carrying on a conversation with someone who was not there) and laughing for no reason.

39.     Based upon Danny's criminal defense counsel's and judge's concerns, an order was entered on November 4, 2019, in Cook County Criminal Case No 16-R-1565301, requiring Danny to undergo a psychiatric evaluation at Cermak Hospital, operated by Cook County by and through Cook County Health System.

40.     On November 5, 2019, Danny was evaluated at the Cermak Hospital by Dr. Marri.

41.     At that time, despite the fact that Danny exhibited disturbing behavior, for unknown

reasons, Dr. Marri indicated that it is safe for him to go back to his living unit in Division 6.

42.     Nevertheless, Dr. Marri did document Danny's mental condition and even prescribed Zoloft to him.

43.     On November 10, 2019, at approximately 2:11 a.m., Danny's cellmate notified Defendant, Austin, that Danny had hung himself and was unconscious in their cell.

44.     At approximately 2:13 a.m., Defendants Austin, Archer, Dabrowski, and Lipscomb entered Danny's cell.

45.     At approximately, 2:15 a.m., Dabrowski, finally notified paramedics at the Cermak Hospital.

46.     Upon information and belief, at around 2:16 a.m., the Defendants, Archer, Austin, Dabrowski, and Lipscomb, along with other staff at the scene, removed the bedsheets from Danny's neck and finally started resuscitation attempts, including CPR.

47.     Unfortunately, the Defendants' delayed actions were not enough to save Danny's life and he was pronounced dead on November 10, 2019.

### COUNT I – FAILURE TO PROTECT (Directed at Austin)

48.     Plaintiff restates and realleges Paragraphs 1 through 47 as if fully set forth herein.

49.     Defendant Austin was well aware of Danny's mental condition, especially after his evaluation at the Cermak Hospital on November 5, 2019, and knew or should have known that there was a strong possibility that Danny could harm himself.

50.     Austin consciously failed to take reasonable measures to prevent Danny from committing suicide, which include but not limited to:

      a.   Failure to monitor Danny by video;

      b.   Failure to routinely check on Danny in his cell;

c. Failure to ensure that Danny was taking his medications; and/or

d. Failure to ensure that Danny did not have access to bed sheets or other items that could allow him to hang or harm himself.

51. Austin also failed to promptly take reasonable measures after he learned that Danny was unconscious, which include, but are not limited to:

a. Unreasonable delay between the time notice from Danny's cellmate was received and the time that Danny's cell was accessed;

b. Failure to immediately remove the noose from Danny's neck upon arrival to the cell;

c. Failure to immediately call 911 to ensure that Danny received the necessary emergency help; and/or

d. Failure to promptly perform CPR or promptly provide other emergency care to Danny.

52. Had it not been for Austin's failures, as alleged above, Danny would have survived.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendant, CHARLES L. AUSTIN, in an amount to be determined at trial to compensate the Plaintiff for her loss, plus a substantial sum in punitive damages, as well as costs, attorneys' fees and such other relief favorable to the Plaintiff that is deemed just and equitable.

## COUNT II - STATE LAW CLAIM FOR WRONGFUL DEATH (Directed at Austin)

53. Plaintiff restates and realleges Paragraphs 1 through 52 as if fully set forth herein.

54. At all relevant times, Austin had a duty to exercise ordinary care and not to act in a reckless, willful, or wanton fashion, in order to ensure that Danny was not placed in a dangerous situation while he was being detained at CCDOC.

55.     At the stated time and place, on or about November 10, 2019, Austin breached the foregoing duties and was guilty of committing one or more of the following wrongful, negligent, deliberate, willful, indifferent and/or wanton acts and/or omissions:

   a.     Failed to monitor Danny, despite being aware of his mental state;

   b.     Failed to conduct periodic checks on Danny;

   c.     Failed to ensure that Danny did not have access to bed sheets or other dangerous items that he could use to harm himself;

   d.     Failed to ensure that Danny was taking his medications;

   e.     Failed to promptly take measures to access Danny's cell and remove the noose from his neck in order to save his life;

   f.     Failed to immediately call 911 or notify other members of the staff at CCDOC to immediately call 911, upon learning of Danny's condition; and/or

   g.     Failed to promptly provide proper emergency care, such as CPR to Danny.

56.     As a direct and proximate result of one or more of the foregoing negligent, reckless, willful, deliberate, indifferent and/or wanton acts and omissions of Austin, Danny died on November 10, 2019.

57.     As a direct and a proximate result of the death of Danny, as her sole heir, the Plaintiff has suffered great and grievous losses of a personal and a pecuniary nature, and has been deprived of the society, companionship, friendship, comfort, guidance, love, support and affection of Danny, subjecting the Defendant, Austin, to liability pursuant to the Illinois Wrongful Death Act 740 ILCS 180/1, *et seq.*

WHEREFORE, Plaintiff prays for a judgment against the Defendant, CHARLES L. AUSTIN, in a fair and reasonable amount in excess of $100,000.00, as established at trial, plus costs of this lawsuit, and such other and further relief as this Court deems just and appropriate.

## **COUNT III – FAILURE TO PROTECT (Directed at Archer)**

58.     Plaintiff restates and realleges Paragraphs 1 through 47 as if fully set forth herein.

59.     Defendant Archer was well aware of Danny's mental condition, especially after his evaluation at the Cermak Hospital on November 5, 2019, and knew or should have known that there was a strong possibility that Danny could harm himself.

60.     Archer consciously failed to take reasonable measures to prevent Danny from committing suicide, which include but not limited to:

    a.  Failure to monitor Danny by video;

    b.  Failure to routinely check on Danny in his cell;

    c.  Failure to ensure that Danny was taking his medications; and/or

    d.  Failure to ensure that Danny did not have access to bed sheets or other items that could allow him to hang or harm himself.

61.     Archer also failed to promptly take reasonable measures after he learned that Danny was unconscious, which include, but are not limited to:

    a.  Failure to immediately remove the noose from Danny's neck upon arrival to the cell;

    b.  Failure to immediately call 911 to ensure that Danny gets the necessary emergency help; and/or

    c.  Failure to promptly perform CPR or promptly provide other emergency care to Danny.

62.     Had it not been for Archer's failures, as alleged above, Danny would have survived.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendant, PARRISH D. ARCHER, in an amount to be determined at trial to compensate the Plaintiff for her loss, plus a substantial sum in punitive damages, as well as costs, attorneys' fees and such other

relief favorable to the Plaintiff that is deemed just and equitable.

## COUNT IV - STATE LAW CLAIM FOR WRONGFUL DEATH (Directed at Archer)

63.     Plaintiff restates and realleges Paragraphs 1 through 47 and 58 through 62 as if fully set forth herein.

64.     At all relevant times Archer had a duty to exercise ordinary care and not to act in a reckless, willful, or wanton fashion, in order to ensure that Danny was not placed in a dangerous situation while he was being detained at CCDOC.

65.     At the stated time and place, on or about November 10, 2019, Archer breached the foregoing duties and was guilty of committing one or more of the following wrongful, negligent, deliberate, willful, indifferent and/or wanton acts and/or omissions:

a.     Failed to monitor Danny, despite being aware of his mental state;

b.     Failed to conduct periodic checks on Danny;

c.     Failed to ensure that Danny did not have access to bed sheets or other dangerous items that he could use to harm himself;

d.     Failed to ensure that Danny was taking his medications;

e.     Failed to immediately call 911 or notify other members of the staff at CCDOC to immediately call 911, upon learning of Danny's condition; and/or

f.     Failed to promptly provide proper emergency care, such as CPR to Danny.

66.     As a direct and proximate result of one or more of the foregoing negligent, reckless, willful, deliberate, indifferent and/or wanton acts and omissions of Archer, Danny died on November 10, 2019.

67.     As a direct and a proximate result of the death of Danny, as her sole heir, the Plaintiff has suffered great and grievous losses of a personal and a pecuniary nature, and has been deprived of the society, companionship, friendship, comfort, guidance, love, support and affection

11

of Danny, subjecting the Defendant, Archer, to liability pursuant to the Illinois Wrongful Death Act 740 ILCS 180/1, *et seq.*

WHEREFORE, Plaintiff prays for a judgment against the Defendant, PARRISH D. ARCHER, in a fair and reasonable amount in excess of $100,000.00, as established at trial, plus costs of this lawsuit, and such other and further relief as this Court deems just and appropriate.

### COUNT V – FAILURE TO PROTECT (Directed at Lipscomb)

68.    Plaintiff restates and realleges Paragraphs 1 through 47 as if fully set forth herein.

69.    Defendant Lipscomb was well aware of Danny's mental condition, especially after his evaluation at the Cermak Hospital on November 5, 2019, and knew or should have known that there was a strong possibility that Danny could harm himself.

70.    Lipscomb consciously failed to take reasonable measures to prevent Danny from committing suicide, which include but not limited to:

    a.  Failure to monitor Danny by video;

    b.  Failure to routinely check on Danny in his cell;

    c.  Failure to ensure that Danny was taking his medications; and/or

    d.  Failure to ensure that Danny did not have access to bed sheets or other items that could allow him to hang or harm himself.

71.    Lipscomb also failed to promptly take reasonable measures after she learned that Danny was unconscious, which include, but are not limited to:

    a.  Failure to immediately remove the noose from Danny's neck upon arrival to the cell;

    b.  Failure to immediately call 911 to ensure that Danny gets the necessary emergency help; and/or

    c.   Failure to promptly perform CPR or promptly provide other emergency care to Danny.

72.    Had it not been for Lipscomb's failures, as alleged above, Danny would have survived.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendant, SHERRI L. LIPSCOMB, in an amount to be determined at trial to compensate the Plaintiff for her loss, plus a substantial sum in punitive damages, as well as costs, attorneys' fees and such other relief favorable to the Plaintiff that is deemed just and equitable.

## COUNT VI - STATE LAW CLAIM FOR WRONGFUL DEATH (Directed at Lipscomb)

73.    Plaintiff restates and realleges Paragraphs 1 through 47 and 68 through 72 as if fully set forth herein.

74.    At all relevant times, Lipscomb had a duty to exercise ordinary care and not to act in a reckless, willful, or wanton fashion, in order to ensure that Danny was not placed in a dangerous situation while he was being detained at CCDOC.

75.    At the stated time and place, on or about November 10, 2019, Lipscomb breached the foregoing duties and was guilty of committing one or more of the following wrongful, negligent, deliberate, willful, indifferent and/or wanton acts and/or omissions:

    a.    Failed to monitor Danny, despite being aware of his mental state;

    b.    Failed to conduct periodic checks on Danny;

    c.    Failed to ensure that Danny did not have access to bed sheets or other dangerous items that he could use to harm himself;

    d.    Failed to ensure that Danny was taking his medications;

    e.    Failed to immediately call 911 or notify other members of the staff at CCDOC to immediately call 911, upon learning of Danny's condition; and/or

f.      Failed to promptly provide proper emergency care, such as CPR to Danny.

76.      As a direct and proximate result of one or more of the foregoing negligent, reckless, willful, deliberate, indifferent and/or wanton acts and omissions of Lipscomb, Danny died on November 10, 2019.

77.      As a direct and a proximate result of the death of Danny, as her sole heir, the Plaintiff has suffered great and grievous losses of a personal and a pecuniary nature, and has been deprived of the society, companionship, friendship, comfort, guidance, love, support and affection of Danny, subjecting the Defendant, Lipscomb, to liability pursuant to the Illinois Wrongful Death Act 740 ILCS 180/1, *et seq.*

WHEREFORE, Plaintiff prays for a judgment against the Defendant, SHERRI, L. LIPSCOMB, in a fair and reasonable amount in excess of $100,000.00, as established at trial, plus costs of this lawsuit, and such other and further relief as this Court deems just and appropriate.

## COUNT VII – FAILURE TO PROTECT (Directed at Dabrowski)

78.      Plaintiff restates and realleges Paragraphs 1 through 47 as if fully set forth herein.

79.      Defendant Dabrowski was well aware of Danny's mental condition, especially after his evaluation at the Cermak Hospital on November 5, 2019, and knew or should have known that there was a strong possibility that Danny could harm himself.

80.      Lipscomb consciously failed to take reasonable measures to prevent Danny from committing suicide, which include but not limited to:

a.   Failure to monitor Danny by video;

b.   Failure to check on Danny in his cell;

c.   Failure to ensure that Danny was taking his medications; and/or

d.   Failure to ensure that Danny did not have access to bed sheets or other items that

14

could allow him to hang or harm himself.

81.     Dabrowski also failed to promptly take reasonable measures after he learned that Danny was unconscious, which include, but are not limited to:

    a.  Failure to immediately remove the noose from Danny's neck upon arrival to the cell;

    b.  Failure to immediately call 911 to ensure that Danny gets the necessary emergency help; and/or

    c.  Failure to promptly perform CPR or promptly provide other emergency care to Danny.

82.     Had it not been for Dabrwoski's failures, as alleged above, Danny would have survived.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendant, ALOJZY K. DABROWSKI, in an amount to be determined at trial to compensate the Plaintiff for her loss, plus a substantial sum in punitive damages, as well as costs, attorneys' fees and such other relief favorable to the Plaintiff that is deemed just and equitable.

## COUNT VIII - STATE LAW CLAIM FOR
## WRONGFUL DEATH (Directed at Dabrowski)

83.     Plaintiff restates and realleges Paragraphs 1 through 47 and 78 through 82 as if fully set forth herein.

84.     At all relevant times, after concluding his investigation, Dabrowski had a duty to exercise ordinary care and not to act in a reckless, willful, or wanton fashion, in order to ensure that Danny was not placed in a dangerous situation while he was being detained at CCDOC.

85.     At the stated time and place, on or about November 10, 2019, Dabrowski breached the foregoing duties and was guilty of committing one or more of the following wrongful, negligent, deliberate, willful, indifferent and/or wanton acts and/or omissions:

a.      Failed to monitor Danny, despite being aware of his mental state;

b.      Failed to conduct periodic checks on Danny;

c.      Failed to ensure that Danny did not have access to bed sheets or other dangerous items that he could use to harm himself;

d.      Failed to ensure that Danny was taking his medications;

e.      Failed to immediately call 911 or notify other members of the staff at CCDOC to immediately call 911, upon learning of Danny's condition; and/or

f.      Failed to promptly provide proper emergency care, such as CPR to Danny.

86.     As a direct and proximate result of one or more of the foregoing negligent, reckless, willful, deliberate, indifferent and/or wanton acts and omissions of Dabrowski, Danny died on November 10, 2019.

87.     As a direct and a proximate result of the death of Danny, as her sole heir, the Plaintiff has suffered great and grievous losses of a personal and a pecuniary nature, and has been deprived of the society, companionship, friendship, comfort, guidance, love, support and affection of Danny, subjecting the Defendant, Dabrowski, to liability pursuant to the Illinois Wrongful Death Act 740 ILCS 180/1, *et seq.*

WHEREFORE, Plaintiff prays for a judgment against the Defendant, ALOJZY K. DABROWSKI, in a fair and reasonable amount in excess of $100,000.00, as established at trial, plus costs of this lawsuit, and such other and further relief as this Court deems just and appropriate.

### COUNT IX – FAILURE TO PROTECT  (Directed at Dr. Marri)

88.     Plaintiff restates and realleges Paragraphs 1 through 47 as if fully set forth herein.

16

89.     Defendant, Dr. Marri, was well aware of Danny's mental condition and should have known, based upon her evaluation of Danny, that he would not be safe in Division 6 living unit.

90.     Defendant, Dr. Marri, was also well aware that if Danny was designated as a high-risk patient, he would have been transferred to the "psych unit" at RTU, where he had a better chance of being properly monitored by correctional officers.

91.     However, based on her knowledge of inadequate staffing and inadequate means to provide appropriate care for all detainees with mental health conditions at CCDOC, Dr. Marri intentionally chose to designate Danny as a "low-risk" detainee and send him out to the regular living unit in Division 6, of CCDOC.

92.     Had it not been for Dr. Marri's failures, or deliberate acts, as alleged above, Danny would, more likely than not, have survived.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendant, Dr. BHARATHI R. MARRI, M.D., in an amount to be determined at trial to compensate the Plaintiff for her loss, plus a substantial sum in punitive damages, as well as costs, attorneys' fees and such other relief favorable to the Plaintiff that is deemed just and equitable.

## COUNT X - STATE LAW CLAIM FOR WRONGFUL DEATH (Directed at Dr. Marri)

93.     Plaintiff repeats and realleges Paragraphs 1 through 47 and 88 through 92, as if fully set forth herein in this Paragraph

94.     After assuming the care of Danny, Dr. Marri owed a duty to use, in her care of Danny, that degree of skill customarily required of like-kind doctors in the area, but in violation of said duty, Dr. Marri was then and there guilty of one or more of the following willful, wanton, and/or wrongful acts or omissions:

a.      Failed to properly diagnose Danny's condition;

b.      Failed to recognize signs of a risk that Danny could be suicidal;

c.      Failed to designate Danny as a high-risk patient;

d.      Improperly switched his medication;

e.      Failed to schedule a prompt follow-up or check in with Danny to ensure that his condition did not worsen and/or that he was taking his medication;

f.      Failed to recommend that Danny is placed under appropriate observation; and/or

j.      Failed to inform the CCDOC officials regarding the need to carefully monitor Danny.

95.      As a direct and proximate result of one or more of the foregoing negligent and reckless actions and/or omissions of Dr. Marry, Danny died on November 10, 2019.

96.      As a direct and a proximate result of Danny's Death, Plaintiff, as Danny's sole heir, the Plaintiff has suffered great and grievous losses of a personal and a pecuniary nature, and has been deprived of the society, companionship, friendship, comfort, guidance, love, support and affection of Danny, subjecting the defendant, Dr. Marri, to liability pursuant to the Illinois Wrongful Death Act 740 ILCS 180/1, *et seq.*

WHEREFORE, Plaintiff prays that this Court enter judgment as and against the defendant BHARATHI R. MARRI, M.D., in an amount in excess of $100,000.00, plus the Plaintiff's costs of this action, and further, for that relief deemed proper by this Honorable Court.

## COUNT XI – *RESPONDEAT SUPERIOR*
## UNDER STATE LAW (Directed at Cook County and the Sheriff)

97.      Plaintiff restated and realleges Paragraphs 1 through 96 as if fully set forth herein.

98.      At all relevant times, Defendants, Austin, Archer, Lipscomb, Dabrowski, and Dr. Marri, as well as other employees or agent (the "Agents"), held themselves out as agents, apparent agents, and/or employees of the Cook County and the Sheriff.

99.     The Agents' wrongful, willful, wanton, and/or negligent conduct, as alleged in this Complaint, occurred within the scope of their employment for Cook County and the Sheriff.

100.     Further, the Sheriff and Cook County knew or should have known that Agents' conduct was wrongful conduct and failed to promulgate appropriate procedures and/or training to the Agents that would have prevented Danny's death.

101.     Accordingly, the County and the Sherriff are vicariously liable for the Agents' willful, wanton, and/or negligent conduct, as alleged in this Complaint.

WHEREFORE, Plaintiff, prays for a judgment against the Defendants, COOK COUNTY, ILLINOIS and THOMAS DART, SHERIFF OF COOK COUNTY, in a fair and reasonable amount in excess of $100,000.00, as established at trial, plus costs of this lawsuit, and such other and further relief as this Court deems just and appropriate.

## COUNT XII – LIABILITY OF
## DEFENDANTS, SHERIFF AND COOK COUNTY UNDER SECTION 1983

102.     Plaintiff restates and realleges Paragraphs 1 through 96, as if fully set forth herein.

103.     As alleged above, Defendants, Sheriff and Cook County, have been aware of systemic gaps for protecting inmates exhibiting mental instability and suicidal behavior since as early as 2008.

104.     Due to severe staff shortage and failure to implement proper procedures, Defendants, Sheriff and Cook County, have been unable to provide correctional officers with specialized training to supervise and monitor inmates who have been flagged as having mental illnesses.

105.     Further, due to sever staff shortages, incompetence, and/or complete disregard for the safety of inmates, Defendants, Sheriff and Cook County, have failed to ensure that all inmates with mental illnesses are properly transferred to the "psych tier" at RTU and are properly

monitored there.

106.    Defendants, Sheriff and Cook County know that inmates with various mental illnesses are at unreasonable risk of harm, unless they are properly transferred and properly monitored at the "psych tier" art RTU.

107.    The above-described policies and widespread equivalent practices were the moving force behind the death of Danny.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendants, COOK COUNTY, ILLINOIS and THOMAS DART, SHERIFF OF COOK COUNTY, in an amount to be determined at trial to compensate the Plaintiff for her loss, plus a substantial sum in punitive damages, as well as costs, attorneys' fees and such other relief favorable to the Plaintiff that is deemed just and equitable.

## COUNT XIII – SURVIVAL ACTION UNDER STATE LAW (Directed at All Defendants)

108.    Plaintiff repeats and realleges Paragraphs 1 through 107, as if fully set forth herein.

109.    As a further direct and proximate result of one or more of the above-mentioned acts and/or omissions of the Defendants, Dr. Marri, Austin, Archer, Dabrowski, Lipscomb, the Sheriff, and/or Cook County, prior to his death, Danny did suffer serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering prior to his death, subjecting the foregoing Defendants to liability pursuant to the Illinois Survival Act, 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, as the Administrator of the Estate of DANNY KIM, prays that this Court enter judgment as and against the Defendants, THOMAS DART, SHERIFF OF COOK COUNTY; PARRISH D. ARCHER, JR.; CHARLES L. AUSTIN; SHERRI L. LIPSCOMB; COUNTY OF COOK, ILLINOIS; and DR. BHARATHI R. MARRI, M.D., in an amount in excess of $100,000.00, plus the Plaintiff's costs of this action, and further, for that relief deemed proper

by this Honorable Court.

**A COPY OF THE AFFIDAVIT, PURSUANT TO 735 ILCS 5/2-622 IS ATTACHED HERETO.**

<div style="margin-left:40%">

Respectfully submitted,

JESSICA PARK, Individually and as Independent Administrator of the Estate of DANNY KIM

By:    /s/Boris G. Samovalov
One of Plaintiff's Attorneys

</div>

ZANE D. SMITH & ASSOCIATES, LTD.
111 W. Washington Street, Suite 1750
Chicago, Illinois 60602
Phone: (312) 245-0031
boris@zanesmith.com
zane@zanesmith.com

File.4949

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JESSICA PARK, Individually and as Independent )
Administrator of the Estate of DANNY KIM, )
deceased; )
                        Plaintiffs, )
    v. )        Case No. 20-cv-06662
                              )
THOMAS DART, SHERIFF OF COOK )
COUNTY; PARRISH D. ARCHER, JR.; )
CHARLES L. AUSTIN; ALOJZY K. )
DABROWSKI; SHERRI L. LIPSCOMB; )
COUNTY OF COOK, ILLINOIS; and DR. )
BHARATHI R. MARRI, M.D.; )
                    Defendant(s). )

**AMENDED 735 ILCS 5/2-622 AFFIDAVIT OF BORIS G. SAMOVALOV**

Affiant, Boris G. Samovalov, first having been duly sworn, deposes and states that if he were called to testify at trial, could competently and affirmatively testify to the following:

1.      That the Affiant states that he is a resident of the City of Chicago State of Illinois, is over the age of eighteen years, and is not a party to the present cause of action;

2.      That the Affiant states that he is a duly licensed attorney practicing law in the State of Illinois; and that he is employed at the law firm of Zane D. Smith & Associates, Ltd., whose offices are located at 111 W. Washington Street, Suite 1750, Chicago, Illinois;

3.      That the Affiant states that he is legal counsel for the Plaintiff in the above-titled Case;

4.      That the Affiant states that the present cause of action is a Healing Art Malpractice lawsuit and pursuant to 735 ILCS 5/2-622, also states that he has reviewed the facts of the instant case with a health care professional, and that the affiant reasonably believes the following:

        a.    Said health care professional is knowledgeable in the relevant issues involved in this particular action;

        b.    Said health care professional practices or has practiced within the last 6 years in the same area of health care or medicine that is at issue in this particular action;

        c.    Said health care professional meets the expert witness standards set forth in paragraphs (a) though (d) of *735 ILCS 5/8-2501*;

    d.    Said health care professional has reviewed the medical records, facts and other relevant material pertaining to the present cause; and

    e.    Said health care professional has determined in a written report, after a review of the medical records and other relevant material involved in this particular action, that there is a reasonable and meritorious cause for the filing of this action against the defendants; *See* health care professional's report attached to this Affidavit.

5.    That the Affiant states that he has concluded, on the basis of the reviewing health care professional's review and consultation, that there is a reasonable and meritorious cause for filing the instant action.

FURTHER AFFIANT SAYETH NOT

_____
BORIS G. SAMOVALOV

## **VERIFICATION BY CERTIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

By:    _____
    Boris G. Samovalov

Date:    12/20/2020

Boris G. Samovalov – ARDC: 6305036
ZANE D. SMITH & ASSOCIATES, LTD.
111 W. Washington Street
Suite 1750
Chicago, Illinois 60602
Ph. 312-245-0031
Boris@zanesmith.com

Page **2** of **2**

## CERTIFICATE OF REVIEWING HEALTH PROFESSIONAL

I am a licensed physician, practicing and specializing in adult psychiatry, and am knowledgeable and experienced in the relevant issues involved in this Action. I have practiced in the area of healthcare that is at issue in this action within the last 6 years and I am familiar with the applicable standards of care related to this Case.

In connection with my opinions presented in this Certificate, I have reviewed the following Records for Danny Kim:

a. Cermak Health Services of Cook County/Cook County Health and Hospital System Records;
b. Redacted Cook County Sheriff's Records from Cook County Department of Corrections; and
c. Partial LA Department of Mental Health Records.

Based upon my review of the foregoing records, I have determined that there is a reasonable and meritorious case for filing an action against Bharathi R. Marri, M.D. and her employer or apparent employer County of Cook, Illinois.

In review of the foregoing documents Mr. Kim was seen by Dr. Marri on November 5, 2019. At that time, Dr. Marri inappropriately switched Mr. Kim's medications from Prozac to Zoloft without ordering proper supervision to ensure that he does not have an adverse psychiatric reaction as a result of the change in medication. Furthermore, she improperly diagnosed Mr. Kim's Psychiatric condition. Notably, despite her observation that Mr. Kim complained of hearing voices, complained of high levels of anxiety, depression, and failure to articulate why he has a will to live, Dr. Marri inexplicably determined that Mr. Kim was a low-risk inmate who could go back to the standard living unit in Cook County Department of Corrections without any form of psychiatric observation. Indeed, contrary to her observations, she even improperly documented that his anxiety was low and that he has no past psychiatric history.

Based on the foregoing, it is my opinion that had Dr. Marri properly diagnosed Danny Kim with schizophrenia, had she not switched his medications, and had she ordered that he be placed in a proper psychiatric setting, with proper observation by medical professionals or guards, more likely than not, his suicide would have been prevented. As a result of Dr. Marri's failures and deviations from psychiatric standard of care, Mr. Kim committed suicide on or about November 10, 2019, before anyone could have intervened in order to take appropriate measures to stop him from harming himself. Had, Mr. Kim been placed an appropriate psychiatric setting, with appropriate observation, more likely than not, his suicide would have been avoided.

Therefore, it is my opinion that Dr. Marri and Cook County (by and through Dr. Marri, as its apparent agent) deviated from the standard of care that a reasonable

psychiatrist owed to Mr. Kim and, more likely than not, Mr. Kim died as a result of their deviations from the standard of care.

This opinion is based on the documents I received and reviewed, as outlined in this Report. I reserve the right to amend my opinion, if the theories of liability in this Case are modified, new facts arise, additional medical or psychiatric records are supplied, or based on additional review of materials supplied to me.

Sincerely,

CONFIDENTIAL          CONFIDENTIAL